UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
MOSES SMITH,

                       Plaintiff,                     02 Civ. 220 (PKC)

    -against-

                                                    MEMORANDUM
                                                    AND ORDER

MABSTOA/NYCTA,

                       Defendants.
------------------------------------------------------------x

P. KEVIN CASTEL, District Judge:

        This action was filed on January 10, 2002. The plaintiff, who is pro se, alleges that the defendants Manhattan and Bronx Surface Transit Operating Authority ("MABSTOA") and New York City Transit Authority ("NYCTA") violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et. seq., by failing to hire him and retaliating against him. Plaintiff subsequently filed an Amended Complaint ("AC") on March 11, 2002. The Hon. Victor Marrero, U.S.D.J., to whom this case was then assigned, established a discovery schedule, and the action was subsequently reassigned to my docket. Discovery is now closed.

        Defendants initially filed this motion for summary judgment in June 2004, through this District's Electronic Case Filing system. Because the action was not eligible for administration under that system, the motion was terminated. On December 9, 2004, defendants re-filed the motion for summary judgment, including the proof of service and notice to a pro se litigant opposing a motion for summary judgment required by Local

Rule 56.2. In a letter dated September 29, 2004, while the defendants' original summary judgment motion was pending, I wrote to the plaintiff notifying him that if he failed to submit any papers in response to the defendants' motion, I would proceed to decide the motion. Despite having been served with two notices of motion and a letter from the Court, plaintiff has not communicated with the Court. I therefore decide this motion without the benefit of plaintiff's opposition papers.

For the reasons stated below, the defendants' motion is granted.

Background

The Amended Complaint asserts that Smith is the victim of employment discrimination based on age and disability. (AC at 3) The plaintiff claims that he passed a civil service exam, was listed as eligible for employment by defendant "Transit Authority," but not hired. (AC at 4) It is clear that plaintiff applied to work for MABSTOA, not the NYCTA. (56.1 Ex. 4, 5) Smith, who was born on March 25, 1945, stated that he believed he was discriminated against under the ADEA because at age 55, he was the oldest applicant for employment and did not receive a job offer. (AC at 3; narrative attached at AC) The AC also alleges that plaintiff was discriminated against under the ADA because the defendants inaccurately perceived him as having a "drug disability" or a "drug addiction." (AC at 3; Narrative, attached at AC)

NYCTA is a public benefit corporation created by the state of New York for the purpose of operating transit facilities. N.Y. Pub. Auth. L. § 1201 et seq. MABSTOA is a public benefit corporation that provides bus service. N.Y. Pub. Auth. L. § 1203-a(2). It is a statutory subsidiary of NYCTA. Id. From 1966 to 1995, NYCTA employed the plaintiff as a motorman and a train service supervisor. (56.1 ¶ 4; Smith

2

Dep. at 8) In October 1995, Smith tested positive for cocaine during a random drug test. (Smith Dep. at 8) Smith contends that he was taking Tylenol 3 with codeine at the time, and did not use illegal drugs. (Smith Dep. at 8-10) Rather than participate in a mandatory treatment program, Smith voluntarily retired. (Smith Dep. at 8-9) In 1999, Smith applied to MABSTOA for a position as a cleaner. (56.1 Ex. 4, 5) NYCTA and MABSTOA are separate entities, but share a common personnel department. (Gorman Aff. ¶ 2) According to Richard Gorman, NYCTA's assistant vice president of employment services, NYCTA and MABSTOA have a policy that, when a former employee of either entity applies for employment, the entity ascertains the reason that the prior employment was terminated. (Gorman Aff. ¶ 3) At first, the defendants were unable to identify the facts surrounding Smith's retirement. (56.1 Ex. 6) Subsequently, defendants learned that Smith retired after a positive drug test, and did so rather than undergo treatment. (Gorman Aff. ¶ 4; 56.1 Ex. 7, 8)

According to Gorman, any employee who tests positive for drug use and refuses to participate in the mandatory drug treatment program will face disciplinary charges and termination. (Gorman Aff. ¶ 4) Gorman states that NYCTA and MABSTOA have blanket policies that preclude the re-hiring of an employee who voluntarily retires instead of receiving treatment or facing disciplinary charges. (Gorman Aff. ¶ 4) When an employee tests positive for drugs, Gorman states, the defendants do not undertake an investigation to determine whether that person is an addict or a one-time user. (Gorman Aff. ¶ 5) However, because plaintiff retired instead of facing disciplinary charges, MABSTOA did not hire him for the cleaner/helper position. (56.1 ¶¶ 8, 13)

3

Discussion

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), Fed. R. Civ. P. It is the initial burden of a movant on a summary judgment motion to come forward with evidence on each material element of his claim or defense, demonstrating that he or she is entitled to relief. A fact is material if it "might affect the outcome of the suit under the governing law . . ." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Under Vermont Teddy Bear Co. v. 1-800 Beargrams Co., 373 F.3d 241, 244 (2d Cir. 2004), the burden lies with the moving party to establish that there are no material issues of fact that require a trial on the merits. The movant bears this burden even when the opposing party fails to submit opposition papers, or comes forward only with cursory opposition. Id. A district court evaluating a motion for summary judgment may not rely solely on the movant's Rule 56.1 statement, and must independently evaluate the factual record to make certain that there are no material questions of fact precluding summary judgment. Id. Hence, the movant's burden remains high, regardless of whether the non-moving party has filed opposition to the summary judgment motion.

1. Plaintiff's Americans with Disabilities Act Claim

I first address Smith's contention that the defendants violated the ADA. As one element of a prima facie case under the ADA, a plaintiff must show that he or she has a disability as defined by the ADA. Schaefer v. State Insurance Fund, 207 F.3d 139, 142 (2d Cir. 2000) (per curiam). The ADA defines a disability as "a physical or mental

impairment that substantially limits one or more of the major life activities" of an individual. 42 U.S.C. § 12102(2)(A). Disability also may be established through "a record of such an impairment," or "being regarded as having such an impairment." 42 U.S.C. § 12102(2)(B-C). A former drug user who is successfully rehabilitated is protected under the ADA, although an employee actively engaged in drug use is not. 42 U.S.C. § 12114(a-b); Buckley v. Consolidated Edison Co. of New York, Inc., 155 F.3d 150, 154 (2d Cir. 1998) (en banc)

Plaintiff does not assert that he was, in fact, impaired by a drug addiction. To the contrary, he claims that he was not engaged in drug use or addicted to drugs, and was taking Tylenol with codeine to alleviate knee pain. (narrative attached to AC; Smith Dep. at 9, 46) Nor does the plaintiff contend that he has an actual record of such an impairment. Rather, this action arises from the plaintiff's contention that the defendants "regarded [him] as having such an impairment." 42 U.S.C. § 12102(2)(C). In Sutton v. United Air Lines, Inc., 527 U.S. 471, 489 (1999), the Supreme Court explained that "[t]here are two apparent ways in which individuals may fall within this statutory definition: (1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more life activities."

Defendants argue that, assuming arguendo that MABSTOA considered the plaintiff unable to performer work as a cleaner because of one-time drug use, this Court should grant their summary judgment motion under the reasoning of EEOC v. J.B. Hunt Transport Inc., 321 F.3d 69, 76-77 (2d Cir. 2003). Hunt holds that an employer will not

5

be liable unless the plaintiff can show that he or she was eliminated from a broad range of jobs due to the employer's belief that the plaintiff is impaired. Id. at 75. The Second Circuit held that use of certain medications by would-be long-distance tractor-trailer drivers impaired their driving abilities, and that the defendant transportation company was warranted in not hiring them as tractor-trailer drivers. Id. The employer's criterion was permissible because these applicants remained eligible for other positions within the defendant company. Id. at 75-77. Accord Burton v. Metropolitan Transportation Authority, 244 F. Supp. 2d 252, 259 (S.D.N.Y. 2003) (granting motion for summary judgment because there was no evidence that defendant precluded plaintiff from employment in a broad class of jobs); Shannon v. New York City Transit Authority, 189 F. Supp. 2d 55, 63 (S.D.N.Y. 2002) (visually impaired bus driver not regarded as disabled because he was able to drive other classes of employer's vehicles).

Defendants' reliance on this line of cases is inapposite. According to the facts set forth in the Gorman Affidavit, the plaintiff was fully precluded from any type of employment by MABSTOA and NYCTA due to his previous decision to retire following a failed drug test. The cases that defendants cite all arose when a prospective employee was **not** barred from other jobs with an employer, but only from specific positions in which the plaintiff's condition presented on-the-job risks. True, all of these opinions address the terms of 42 U.S.C. § 12102(2)(C), but they arise in factual contexts quite different from the record set forth by the defendants themselves.

The defendants argue that, in the alternative, summary judgment should be granted because they had a legitimate, non-discriminatory basis for not hiring the plaintiff as a cleaner. Courts have applied the burden-shifting test of McDonnell Douglas Corp. v.

6

Green, 411 U.S. 792, 802-04 (1973), to the ADA. See Greenway v. Buffalo Hilton, 143 F.3d 47, 52 (2d Cir. 1998). Pursuant to its three-part test, McDonnell Douglas first requires the plaintiff to set forth a prima facie case that an employer's actions give rise to an inference of discrimination. 411 U.S. at 802. If the plaintiff meets this burden, the defendant must then proffer a legitimate, non-discriminatory reason for its actions. Id. Third, the plaintiff must establish that the defendant's stated reason was merely a pretext for intentional discrimination. Id. at 804.

In this case, the defendants established a neutral policy that barred re-hiring employees who opt to retire rather than face disciplinary proceedings. The defendants contend that they strictly adhere to this policy. Gorman states:

> The denial of employment to plaintiff in 2000 did not stem from complainant's 1995 use of drugs per se but, rather, resulted from the fact that complainant retired in 1995 in lieu of going into the [Employee Assistance Program] or facing disciplinary charges (termination). Thus, he retired in lieu of discipline for violation of NYCTA rules. Anyone who retired in lieu of facing disciplinary charges would have been treated in a like manner to complainant, i.e., not have been rehired, irrespective of age or underlying basis of the rules violation.

(Gorman Aff. ¶ 4) Smith filed a charge with the New York City Commission on Human Rights on October 6, 2000, alleging that he was discriminated against for perceived drug addiction. (56.1 Ex. 10) In a letter answering the plaintiff's charge, Daniel Topper, NYCTA assistant general counsel, stated that "[i]f the former employee violated rules when previously employed, and such violation caused the employee to leave under circumstances that could have led to discipline and/or termination, he will not be rehired by either organization." (Letter, Jan. 31, 2001, attached at 56.1 Ex. 11)

The defendants' policy concerning drug testing is incorporated into the collective bargaining agreement ("CBA") between MABSTOA/NYCTA and the

7

plaintiff's union, Transport Workers Union of America. The CBA lists cocaine as a controlled substance. (CBA App. E-1, ¶ 4.1, <u>attached at</u> 56.1 Ex. 2) It notes that the "[u]se or possession of Controlled Substances . . . is strictly prohibited," and may result in dismissal. (CBA App. E-1, ¶¶ 6.0, 6.1) An employee with more than one year of service who tests positive for controlled substances "shall be treated through an Employee Assistance Program," as a prerequisite to returning to duty. (CBA App. E-1, ¶¶ 6.6, 10.1) The CBA permits employees to seek outside treatment, provided they receive approval from NYCTA's medical department. (CBA App. E-1, ¶ 9.0) If an employee does not receive treatment, as required by the CBA, the employee is subject to dismissal from service. (CBA App. E-1, ¶ 8.2) An employee shall be restored to service only after enrolling in a treatment program or showing medical proof that he or she is not using controlled substances. (CBA App. E-1, ¶ 9.0)

True, the CBA does not explicitly state that an employee who retires in lieu of accepting treatment or facing disciplinary charges is precluded from being rehired. Nevertheless, the CBA is explicit in requiring employees who test positive for a controlled substance, such as cocaine, to receive treatment, and that those employees must receive treatment before resuming work responsibilities. Critically, plaintiff does not contend that he was in any way wrongfully discharged – constructively or directly – after he tested positive for cocaine use. An internal facsimile sent during the plaintiff's application process notes that he tested positive for cocaine use in 1995, retired with charges pending, was never evaluated under the Employee Assistance Program, and never received treatment. (56.1 Ex. 7) An additional facsimile authored by a director of NYCTA's labor relations division states that plaintiff tested positive for cocaine use in a

random drug test, took a leave of absence, and then retired. (56.1 Ex. 8)

I find the policy set forth in the CBA and further described in the Gorman affidavit to be a neutral, legitimate, nondiscriminatory basis for the defendants' decision not to rehire the plaintiff. Because the plaintiff is pro se and has filed no opposition to defendants' motion, I have reviewed the record in an attempt to ascertain whether the defendants' no-rehiring policy is a pretext to discriminate against persons perceived as rehabilitated former drug users. I find that it is not. As the Supreme Court observed in Raytheon Co. v. Hernandez, 540 U.S. 44, 54-55 (2003), a no-rehire policy for known drug users is "a quintessential, legitimate, nondiscriminatory reason for refusing to rehire an employee who was terminated for violating workplace conduct rules."

In this case, the defendants offer ample opportunity for rehabilitation to an employee who tests positive for controlled substances, either through the defendants' own program or via a pre-approved outside program. The defendants have a legitimate basis for their concern that active drug users not be employed at their work sites, for the safety of employees and transportation passengers alike.

After testing positive for cocaine, Mr. Smith appears to have had three choices. He could have: (1) entered a drug treatment program, (2) faced a disciplinary process, or (3) retired. He chose the last of the three. A policy that prohibits rehiring when an employee elects to pursue the third option is facially neutral, and assumes nothing about the person's status as a person with an actual or perceived disability. Had the plaintiff opted for the disciplinary process, he presumably would have had an opportunity to demonstrate, assuming that he had credible evidence to support the claim, that the drug test was faulty, or that he had taken Tylenol with codeine in response to a

knee problem. It is reasonable for an employer to have an across-the-board policy to consider for rehire only former employees who, in the face of a positive drug test, either accept that they have a problem and seek treatment, or deny that they have a problem and submit to the disciplinary process, which would potentially clear a falsely accused employee of any charge of wrongful drug use.

Because the defendants have established that they have a permissible, nondiscriminatory basis for not re-hiring the plaintiff, and because the record does not raise any triable issues of fact that support a finding of discrimination, the defendants' motion is granted.

2. Plaintiff's Age Discrimination in Employment Act Claim

The Amended Complaint alleges that the plaintiff was discriminated against on the basis of his age.[1] It fails to set forth the particulars of the alleged discrimination, but in his deposition, the plaintiff stated that he believed himself to be the oldest applicant for the cleaner position. (Smith Dep. at 30) Plaintiff testified that he spoke to four or five other applicants, and observed approximately twelve of them. (Smith Dep. at 31) Plaintiff later testified that he was not aware of the names and ages of persons who applied for a position as cleaner and were hired, but reiterated his belief that applicants he observed were younger than he was. (Smith Dep. at 31-32, 47)

Courts generally apply the McDonnell Douglas burden-shifting analysis to ADEA claims. Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 142 (2000).

---

[1] I note that in his pro se form complaint, in which the plaintiff is provided with the different statutory bases for federal employment discrimination claims, Smith checked a box indicating that he was bringing a claim under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e et. seq., and did not check the box indicating that he was pursuing an ADEA claim. However, the Amended Complaint sets forth facts alleging age discrimination, and no facts in support of a Title VII claim. Liberally interpreting the Amended Complaint and drawing all reasonable inferences in his favor, I conclude that the plaintiff intended to pursue an age discrimination claim under the ADEA, and not a claim on the basis of race, color, gender, religion, or national origin under Title VII.

First, the plaintiff must establish a prima facie case of age discrimination. Id. To establish a prima facie case of age discrimination, a plaintiff must show that he or she is a member of a protected class, qualifies for a position, suffered an adverse employment action, and surrounding circumstances give rise to an inference of discrimination. Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 466 (2d Cir.), cert. denied, 534 U.S. 993 (2001). Here, there is no dispute that the plaintiff was over 40 and therefore a member of a protected class under the ADEA, and that he suffered an adverse employment action inasmuch as the defendants withdrew an offer to hire him as a cleaner.

While a plaintiff need not establish a prima facie case at the pleading stage, Swierkiewicz v. Sorema, 534 U.S. 506, 508 (2002), a prima facie case is necessary to survive at the summary judgment stage. As required by Vermont Teddy Bear, I have reviewed the record in an effort to determine whether the plaintiff could be capable of establishing establish a prima facie case of age discrimination, and conclude that he could not. Upon applying for the cleaner position, the plaintiff was placed on List No. 9908, which contained the names of individuals applying for the cleaner position. (56.1 Ex. 3) Among those ultimately hired for the cleaner position were individuals whose ages ranched from 49 to 65 years of age. (56.1 ¶ 13; Ex. 9) These facts are relevant because they show that the defendants hired other individuals within the ADEA-protected class.

Assuming arguendo that the plaintiff could establish a prima facie case, the defendants' policy establishes a neutral, nondiscriminatory basis for their failure to hire him. The defendants no-rehire program, which I discussed in reference to plaintiff's ADA claim, is a neutral policy that was not directed toward persons on an age-discriminatory basis.

Because the plaintiff cannot make out a prima facie case based on the facts of this case, I grant the defendants' summary judgment motion and dismiss the ADEA claim.

Conclusion

The defendants' motion for summary judgment is GRANTED. The clerk is directed to enter judgment in favor of defendants and dismissing this case.

SO ORDERED.

Dated: New York, New York
May 11, 2005

P. Kevin Castel
United States District Judge